The next case on our calendar is United States v. Harris. What? Oh, wait. He's... Who has not checked in? On this case? Wait. Oh, he's not here. You're not Mr. Castro, are you? Oh, I was just told you weren't here. But there you are. Okay, you didn't check in with the clerk. That is a no-no. All right, but you can have your ten minutes. Let's hear. Thank you, Your Honor.  Good morning, Your Honors. May it please the Court. I, Angel Antonio Castro III, Appellate Counsel for the Law Offices of Don Florio, appearing here on behalf of Defendant Menezes Harris. There are two points that I wish to bring to your attention today. One is whether 18 U.S.C. 3582 C.2. is applicable to this case. And two, whether the amount of drugs involved in this case has any bearing when contemplating a reduction for minor role under Amendment 794. But wasn't 794 in effect at the time of this sentencing? It was, Your Honor. So it wasn't passed later. So he can't claim that they didn't know about it. It became effective a month before he was sentenced. However, the sentencing court still sentenced him under the previous guidelines and did not take the necessary considerations under Amendment 794. Was it brought to the district court's attention? At that time, Your Honor? At the sentencing? Yes. No. Even though it had passed by then? Or even though it had been released or published, Amendment 794? It did become effective in November. And so Mr. Harris' counsel, who I assume wasn't you . . . No. . . . did not bring it to the attention of the district court? I don't believe he did, Your Honor. Would that have argued for a lower sentence based on amounts of drugs? Is that what it would have provided? It would have provided for consideration of a minor role reduction. So under the previous law before the amendment, the guidelines were saying, basically, we can compare this activity with any other activity. Whereas the amendment clarified that, no, you're not supposed to compare with other activities. You're supposed to compare with the other people that were involved in the same crime. But the court said the court considered his role in comparison to others involved in this conspiracy. I believe they said that as dicta, but it didn't . . . Why is that dicta? Well, I mean . . . Describing what he did, and that conforms to the amended . . . Well, there is no consideration there. He talks about the amount of drugs, and the amount of drugs has no bearing when it comes to minor role here. Under the old law, minor role, you would compare the amount of drugs. But in this case, it's not . . . I'm sorry. This was a summary statement. I mean, he's just going . . . this is the last paragraph. Exactly. It's just a summary statement. So I think it is . . . And he says that after he discusses the amount of drugs in the case, which if you're discussing the amount of drugs and you're saying that we compared that, that has no bearing on whether you compared it to the other two people. You don't think it's meaningful that he says the court considered his role in comparison to others involved in this conspiracy, his background, and his criminal history in deciding to impose defendants of 97 months. I don't understand why we shouldn't take the court as saying exactly what he meant, which he considered his role in comparison to others involved in this conspiracy.  I don't understand. If you look at the government's pre-investigation report, pre-sentencing investigation report, it clearly discusses his role. And when you look at his role, they limit it to him basically going from point A to point B within New York City. You're saying he didn't give it enough weight, that he had a minor role and he should have had a greater . . . And because the plea agreement was negotiated under the old regime, that the number given to the judge didn't satisfactorily reflect the relative . . . Relevant . . . . . . culpability of his role. Sentencing guidelines, correct. And 3582 clearly applies because it's . . . you're talking about they used a sentencing range that was subsequently amended. And then if you look to one . . . It wasn't subsequently amended. It had been amended before. Well, the guidelines that they were using were subsequently amended. At the time they negotiated the plea agreement, there was an old . . . Exactly. And that's what they used at sentencing. If you look through the transcript during the sentencing, there's no discussion. There's no consideration at all of a minor role reduction, or there's no even consideration of the comparison of his role with the other defendants. And that's clear in the record of the lower court. And you're saying the PSR also reflects misconception about the role, the relative importance of his role? The PSR proves our case that he has a minor role, because if you . . . Can you point to something? Where are you looking at in the PSR? Sure. I'm not sure I have it with me. It is on the report, page 21. I have a quote in my brief. And it talks about how the investigation into the incident case revealed that Codefendant 1 arranged for the distribution of quantities of cocaine and heroin through Harris and another codefendant and others to individuals transporting cocaine and distributing it to Rochester. So, basically what they're saying there is that the main defendant in this case handed out quantities of drugs to other people just to hand within New York City limits to other informants that were transporting these drugs to Rochester and distributing it up there. Okay. And like I was saying, if I continue, you know, the judge reasoned that because 1B110 doesn't list the amendment 794, that it shouldn't be applied. But if you look at 1B111, it specifically states that the court should have used the guidelines in effect at that time. And if they chose to apply earlier sentencing guidelines, then the court should consider subsequent amendments to the extent such amendments are clarifying and not substantive. And it is undisputed, or at least undisputable, that Amendment 794 is clarifying and not substantive. Change. Now, there was also the issue of the defendant's plea agreement prohibiting a sentence reduction. However, if we look at the Supreme Court case of Freeman v. United States, it makes clear that the lower court must give due consideration to the relevant sentencing range. And we're arguing here that the relevant sentencing range should have considered the minor role reduction. And that would have substantially decreased the sentencing range involved here. And like I said, again, drug quantity is not an issue here. And finally, if you look at Mr. Harris, he's been fully cooperative during the lower court proceedings. He's been a model prisoner. And it would be in the best interest of the community that he return and continue his campaign of trying to educate youth, not to get involved in the kind of offenses that got him into this mess. He has some popularity. The committee you're asking for, though, is a resentencing, right? Correct. We're asking for a resentencing, and that's part of the factors that are to be considered. Would the plea agreement be opened up? Would everything be a total do-over? I don't think they would need a total do-over. All they would have to do is sentencing, and the court would have to do its duty of considering whether a minor role reduction is possible. Although the court referred to Amendment 794 in its decision and knew that it had passed. Also, the government indicts with aliases, you know, so that Mr. Harris was also known as One or Uno. That's part of his name. It's hard to argue for a minor role when you're called One. Well, One is a number. That doesn't mean that it indicates any kind of rank. Maybe it's 1 through 10, and 1 is the lowest. That could be the possibility, too, but the people never put that forth. Well, that's how they indicted him, though. Well, that's a nickname. We can't associate a nickname with... That's the point I'm making. His nickname was Uno or One. It's hard to believe that he was a minor player. That's all. One could be, you know, I tell him one time, and he does what he has to do. Good. That's good. All right. Thank you. Have you reserved... I reserve any additional time. You have not reserved any additional time. We'll hear from the government. May it please the Court. Monica Richards on behalf of the government. With regard, I actually couldn't choose in this case which was the better argument to make first. The fact is, as it was presented by my counsel, I think that is the winning argument or the better argument for him to have presented first, that the government, by the time of the sentencing and the court, by the time of the sentencing, didn't have any discussion with regard to the enhancement or the decrease, rather, for minor role adjustment because it had been negotiated out of the plea agreement. So I go back to then, maybe I should have started with, it was negotiated out of the plea agreement. The best argument for this Court to consider first, in my opinion, is that this plea agreement negotiated out the right to move either by the government or by the defendant for an adjustment based on role. Here we had three defendants all charged together in an indictment. Two of them negotiated out of their plea agreement the role adjustment factor. One obtained a minor role adjustment factor, and that was in the plea agreement. One being Mr. Harris? I'm sorry, the other Mr. Harris was Tyrus Harris, was the other one who did negotiate out of this plea agreement. I'm sorry, when you say negotiate out of this plea agreement, what are you referring to exactly, that there was not the minor role adjustment addressed? No, it was in the plea agreement, and in the plea agreement, the parties specifically agreed that . . . Could you point . . . I'm sorry, on page 15 of the appendix, paragraph 10 of the plea agreement, the government and the defendant . . . I'm sorry? I'm sorry, I see what you're saying, yeah. Agreed the filing does not apply. And so that was . . . Addressed in the plea agreement, but it's agreed that the adjustment does not apply. Either way, so that's a benefit also to both ways, to both the government and to the defendant, because we can't move . . . we couldn't apply for an upward adjustment, and he couldn't move for the lower adjustment. And so in the pre-sentence investigation report, that's also contained in there, the acknowledgment that that term, that enhancement rather, was negotiated out at the time of the plea, again, either for an increase or a decrease. So since the rule changed under Amendment 794, isn't it possible that the plea agreement would have provided something else had the rule been different at the time? Not in this case. It's not possible in the . . . maybe it could have been, but that wasn't something . . . that was something that the parties specifically negotiated. That was something that they . . . The district court knew that 794 was on the books when he issued his opinion. That's true. And with regard to the pre-sentence investigation report, it's also in there that this term was in the plea agreement. It was not accounted for in the calculations, and there were no objections to the plea agreement. So at this point, looking back on everything and trying to parse apart that aspect, that's a plea position that was taken. That was a bargain that was struck during the course of the plea. It's unusual, but that's what happened here. So that one defendant did receive a minor rule adjustment, and two did not. To that point, the two who did not both agreed to similar, exact same, relevant conduct. So with regard to the way that this case was indicted, it was an 846 charge in Count 1, but the other defendant was actually also charged with money laundering. And so his role in the offense, his higher role in the offense, was accounted for in the nature of the charge. So that that defendant, in the end, received a sentence of 120 months, which was pursuant to an 11C1C agreement. This defendant received a sentence of 97 months, and the other defendant received a sentence at the mandatory minimum for all three, which was 60 months. So I had a hard time, as I said, writing this, deciding which way to go with what was the best argument for this court's consideration. On reflection, it probably is the fact that the plea agreement negotiated this term out. Unless there's any further questions? But would you point me exactly to where it is clear, from your perspective, that the court considered the new rule in imposing the sentence in December? Oh, I don't know. I couldn't say that he did, Your Honor. I couldn't say that he did. But I can say that he didn't have to, because the district court was aware of this plea agreement where that term had been negotiated out. With regard to the terms of the plea agreement, that would be something that would have had to have been a motion to withdraw the plea agreement. I respectfully disagree with my colleague that this would undo the plea agreement, which we can't do on a 3582C. It's sort of, this is too late for that. But you find it ambiguous in his decision with regard to, well, I guess, no, he recites Amendment 794, as well as saying that he considered his role as compared to others involved in the conspiracy. I'm sorry, maybe I misunderstood Your Honor's question. In the decision in order regarding the 3582C, yes, certainly considered. Yes, I'm sorry. Yes, at page 897 in the record. Right, right. And his consideration of the other defendants was included in the record also with the sentencing transcript at A84 and A85, where he talked about the other defendants and the sentences that they received. He was the same judge who sentenced both. I have no further questions. Thank you, Your Honor. Thank you. And Mr. Castro, you asked for no time for rebuttal. So that concludes our argument calendar. The last case is on submission. I will ask the clerk to adjourn court. Court is adjourned.